CHARLES W. BYRNE, Respondent, Appellant, *v.* BLAKER ADVERTISING AGENCY, INC., Appellant, Respondent.

First Department, November 17, 1933.

*Oscar S. Cox* of counsel [*Walbridge S. Taft* and *Malcolm S. Langford* with him on the brief; *Cadwalader, Wickersham & Taft*, attorneys], for the plaintiff.

*Thomas E. McEntegart,* for the defendant.

TOWNLEY, J. This action is in equity to impress a trust on the advertising account of the Standard Sanitary Manufacturing Company, a client of the defendant agency, and to procure an accounting for a share of the profits of defendant's business on the theory that plaintiff was a joint adventurer with the defendant in its entire business from July 1, 1929, to June 30, 1930.

The defendant had for many years prior to July, 1929, conducted a large advertising agency business in the city of New York. Included among its clients was the American Radiator Company. Prior to the arrangement hereinafter referred to, plaintiff was secretary, treasurer and a stockholder of the Porter-Eastman-Byrne Company, a corporation conducting an advertising agency in Chicago. This corporation had among its clients the Standard Sanitary Manufacturing Company of Pittsburg. In March, 1929, the stock of the American Radiator Company and Standard Sanitary Manufacturing Company was taken over by a holding company known as the American Radiator and Standard Manufacturing Corporation. The executive officers of the two companies whose activities were controlled by the holding company became officers of the holding company.

At about the time of the incorporation of the holding company, after some consultation between the officers of the two companies, it was decided that the consolidated advertising account of the two companies should be handled by the defendant and that the arrangement by which Porter-Eastman-Byrne Company had been handling the advertising of the Standard Sanitary Manufacturing Company of Pittsburg should be terminated. This decision was made in the early part of May, 1929, to be effective as soon as the defendant could set up a satisfactory organization to handle the additional business. In order to accomplish this purpose the defendant decided to establish a Chicago office and

entered into negotiations with various people previously associated with the Porter-Eastman-Byrne Company with a view to having them become associated with the defendant in the conduct of its business. Among those with whom the negotiations were had was the plaintiff.

As a result of these negotiations, a contract was entered into between the plaintiff and the defendant, the terms of which are incorporated in a letter which reads as follows:

" *June* 6th, 1929.

" Mr. C. W. BYRNE,
    " 222 West Adams Street,
        " Chicago, Illinois.

" My dear BYRNE: Mr. Mac has written a long legal contract and asked me to give an opinion. I say, ' no.' Our problem is either much simpler or very much more complicated. At the moment I believe that it is simpler.

" So, I suggest that you proceed to establish the Chicago office of the Blaker Advertising Agency along the lines laid down by you during our talks. That you accept, for the coming twelve months a salary of twenty five thousand dollars with the understanding that if there is any profit at the end of the twelve month period you will receive a fair and equitable division computed on the average basis of the actual commissions brought by you to the enterprise as against the actual commissions existing in the present enterprise or brought to it during the twelve months. The Blaker Advertising Agency bearing all expenses and guaranteeing the above arrangement.

" It is further understood that at the end of· the year we will make a further arrangement for the future.

" Again, and finally, it is understood that if no arrangement can be harmoniously made for future work you will probably keep the physical and personal set-up as your own organization.

" If this is too simple say so, but to my mind it covers the ground.

" With all good wishes,
                " HENRY SELL,
                        " *President.*

" If satisfactory, please sign this carbon and return.
                        " CHAS. W. BYRNE."

Plaintiff indicated his acceptance of the terms stated in this letter by signing a carbon copy thereof as suggested.

Plaintiff claims that this contract constituted the parties joint adventurers and that he was entitled to an accounting of the profits of the entire business of the defendant upon the basis indicated in the contract. The defendant on the other hand claims that

the contract in question was a simple employment contract under which the plaintiff was employed to manage the defendant's Chicago office at a fixed salary plus a commission on the profits of the Chicago office only. The trial court has agreed with the contention of the plaintiff.

The question whether plaintiff was responsible for the arrangement by which the business of the Standard Sanitary Manufacturing Company came to the defendant was the subject of considerable controversy during the trial and a large part of the record is devoted to evidence on this question. An interlocutory judgment was entered holding that the contract constituted the parties joint adventurers for the year July 1, 1929, to June 30, 1930, that the scope of the joint venture was defendant's entire business, and that plaintiff was entitled to an accounting of the defendant's entire business for the period. A reference was ordered (1) to take testimony and determine, both from the testimony taken at the trial and on the reference, whether the plaintiff brought the Standard account to the enterprise, and (2) to state the account between the parties on the basis that plaintiff was to receive a portion of the profits of the entire business. The referee after a full hearing determined that the Standard account was procured by the defendant and not by the plaintiff. There is ample testimony in the record to support this conclusion. In fact, it would be difficult to see how any other conclusion were possible. Based upon this finding, the referee stated the account between the plaintiff and the defendant upon the theory established by the interlocutory judgment and a final judgment was entered in favor of the plaintiff.

We are of the opinion that the court below erred in its finding that the contract between the parties constituted them joint adventurers. The contract contains substantially none of the essentials of a contract of joint venture other than the provision that the plaintiff " receive a fair and equitable division computed on the average basis of the actual commissions brought by you to the enterprise as against the actual commissions existing in the present enterprise or brought to it during the twelve months." This arrangement for a division of the profits upon the basis indicated is equally consistent with the defendant's claim that the contract was one of employment and that the provision referred to was simply additional compensation over and above the fixed salary of $25,000 a year. The contract contains no agreement on the part of the defendant to share any losses arising from the conduct of the business. In fact, any such suggestion is expressly negatived by the provision in the contract that the defendant

was to bear all expenses and guarantee the above arrangement. There is nothing in the agreement itself or in the conduct of the parties under the agreement indicating that the plaintiff was a co-owner with the defendant in the business established. He was, under the terms of the contract, " to establish the Chicago office of the Blaker Advertising Agency." It is conceded that the plaintiff made no capital contribution to the venture. But it is claimed that the equivalent of a capital contribution was made by plaintiff's bringing to the Chicago office certain advertising accounts which he had theretofore been handling or was able to secure. This is obviously nothing other than the usual result of employment upon a commission basis under which the employee brings in as much business as possible in order to increase his compensation.

This case falls fairly within the rule laid down by this court in *Mariner, Inc.,* v. *Hughes* (235 App. Div. 143, 145), in which it was said: " We hold the view that there is not sufficient evidence to sustain defendant's claim of joint venture, for there was no joint proprietary interest nor agreement to share losses as well as profits, and plaintiff was entitled to remuneration even if there were no profits. The circumstance that plaintiff might have received a share of profits, if there had been any, does not, of itself, establish a joint venture or partnership, for it is clear that such arrangement was made as a measure of compensation for services rendered, as distinguished from the right which a principal has to profits as such. (*First National Bank of Meriden* v. *Gallaudet,* 122 N. Y. 655, 657; *Hackett* v. *Stanley,* 115 id. 625, 629; *Cassidy* v. *Hall,* 97 id. 159, 168; *Burnett* v. *Snyder,* 81 id. 550, 555; *Richardson* v. *Hughitt,* 76 id. 55, 58.) "

The contract was neither one of joint venture nor one under which any fiduciary relationship was created entitling the plaintiff to an accounting. Under the terms of the contract, plaintiff is clearly entitled to nothing other than his fixed salary (which concededly has been paid) and a percentage of the profits of the Chicago office computed upon the basis indicated in the contract.

On defendant's appeal, the judgment should be reversed, with costs, and the case transferred to the law side of the court in accordance with the rule laid down in *Kraemer* v. *World Wide Trading Co., Inc.* (195 App. Div. 306); and the appeal of the plaintiff should be dismissed.

FINCH, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgments so far as appealed from by the defendant reversed, with costs to the defendant, appellant, and the case transferred to the law side of the court, and appeal of the plaintiff dismissed.