Isac Wagner et al., Appellants, v. Samuel Derecktor, Respondent.

Argued January 18, 1954; decided March 11, 1954.

*George J. Malinsky* and *Jacob D. Fuchsberg* for appellants. I. The parties were not joint venturers as matter of law. Whether they were joint venturers or principal and broker was, at best, a question of fact properly submitted to the jury under an adequate charge. The jury's verdict determining that a brokerage relation existed is not contrary to law or fact. (*Buckin* v. *Long Is. R. R. Co.*, 286 N. Y. 146; *Forman* v. *Lumm*, 214 App. Div. 579; *Hutchinson* v. *Birdsong*, 211 App. Div. 316; *Richardson* v. *Hughitt*, 76 N. Y. 55; *Jasper* v. *Bernstein*, 259 App. Div. 638; *Hill* v. *Curtis*, 154 App. Div. 662; *Hackett* v. *Stanley*, 115 N. Y. 625; *Jacobs* v. *Escoett*, 265 App. Div. 111.) II. There was no proof of a Mexican meat embargo. No such defense was pleaded. Since the agreement of sale and the agreement with plaintiffs were not conditioned upon the availability of the meat and not conditioned upon the right to export, the failure

of the Mexican supplier to deliver the meat or the inability to export because of embargo were not defenses. (*Vanetta Velvet Corp.* v. *Kakunaka & Co.*, 256 App. Div. 341; *City of Parsons* v. *Fidelity & Deposit Co. of Maryland*, 43 F. 2d 315.) III. The ordinary rule that a defaulting principal is liable for brokerage commissions is applicable to this case. The agreement with plaintiffs contained no provision absolving defendant from his obligation to pay plaintiffs if the contract negotiated by plaintiffs was not consummated for any reason including the fault of the defendant. Under such circumstances, the realization of profits was not a condition precedent to plaintiffs' right to recover. (*Colvin* v. *Post Mtge. & Land Co.*, 225 N. Y. 510: *Fuller* v. *Bradley Contr. Co.*, 229 N. Y. 605; *Traylor* v. *Crucible Steel Co. of America*, 192 App. Div. 445, 232 N. Y. 583.) IV. The admissions made it unnecessary for plaintiffs to prove that a letter of credit was established, or that the proceeds thereof were made available to defendant and defendant was properly foreclosed from attempting to prove such facts. (*Ward* v. *Davega City Radio*, 163 Misc. 335; *Paige* v. *Willet*, 38 N. Y. 28; *Horan* v. *Hastorf*, 223 N. Y. 490.)

*Menahem Stim, Roy M. Cohn* and *Allen S. Stim* for respondent. I. The Appellate Division, in reversing the judgment of the trial court, properly construed the agreement sued on as not contemplating that plaintiffs should be paid one half of the net profits which never accrued, in the absence of fault by defendant. (*Fuller* v. *Bradley Contr. Co.*, 183 App. Div. 6, 229 N. Y. 605; *Ley* v. *Ley & Co.*, 271 App. Div. 439, 296 N. Y. 956; *Reis Co.* v. *Zimmerli*, 170 App. Div. 502; *Hart* v. *Garrett Co.*, 93 App. Div. 145.) II. The agreement sued on contemplated as a matter of law a joint venture and the trial court erred in permitting the jury to assess damages against defendant, in the absence of wrongdoing. (*Rubenstein* v. *Small*, 273 App. Div. 102; *Kraemer* v. *World Wide Trading Co.*, 195 App. Div. 305.) III. Plaintiffs, in failing to show performance of terms and conditions necessary to the fulfillment of the contract, failed to establish a prima facie case. IV. The court erred in the construction of defendant's pleadings, wherein all questions dealing with the proposed letter of credit and embargo on meats in Mexico were taken from the jury.

FROESSEL, J. Plaintiffs, acting as agents for a group of Israeli importers, hereinafter called the buyer, entered into a written agreement of purchase and sale with defendant whereby the latter agreed to ship 1,000 tons of beef from Mexico to the buyer in Israel. The buyer had authorized plaintiffs to secure such a contract, but informed them that for their compensation they would have to look to the seller; with this full disclosure, no conflict of interests is presented.

Accordingly, when plaintiffs, acting as such agents, executed the contract of sale with defendant, the latter in a separate writing also agreed with them in their own behalf: " It is our [defendant's] agreement with you [plaintiffs] that the difference between the gross proceeds of the Letter of Credit and the applicable expenses shall constitute ' net profit ' and shall be divided equally between yourselves and ourselves, such division to be made at the time the proceeds of the Letter of Credit are made available to us." It is this agreement which underlies the present litigation, in which plaintiffs seek as damages one half the " net profit " which they claim defendant would have made on the sale, had he not breached his contract with the buyer by failing to deliver the beef.

In his charge on the question of defendant's liability, the Trial Judge instructed the jury that if the relationship between plaintiffs and defendant was one of employment, plaintiffs were entitled to recover damages, but if it was a joint venture relationship then defendant was entitled to a verdict. Upon this charge, the jury returned a verdict for plaintiffs.

The Appellate Division reversed, the majority holding that the trial court erred in permitting the jury to determine the relationship between the parties; that their agreement " contemplates a joint venture as matter of law ", and " does not contemplate that plaintiffs shall be paid one half of a net profit which never would accrue, in the absence of fault by defendant ". (280 App. Div. 661, 663.) On the question of defendant's fault, the Appellate Division further held, as a matter of law, that the cause of defendant's nondelivery had been an embargo on all meat exports imposed by the Mexican Government.

We cannot agree with the Appellate Division that the agreement between the parties hereto " contemplates a joint venture

as matter of law ''. One finds nothing in the agreement about the parties pooling their efforts, about a mutual right to control the carrying out of the transaction, that plaintiffs were to share in the losses, or that they joined their interests, risks and skills (*Richardson* v. *Hughitt*, 76 N. Y. 55; *Cassidy* v. *Hall*, 97 N. Y. 159; *Jasper* v. *Bernstein*, 259 App. Div. 638; *Jacobs* v. *Escoett*, 265 App. Div. 111). At best, its character was a question of fact for the jury, which by its verdict necessarily found it to be a brokerage agreement.

But the case does not end there; we must further decide whether under this brokerage agreement the parties intended to condition plaintiffs' right to payment upon defendant's actually earning and receiving a net profit on the sale of the beef, and if so, whether the failure of that condition was due to defendant's fault.

Although in the conventional brokerage transaction the broker does not assume the risk of performance, and has earned his commission when he procures a purchaser ready, able and willing to buy, the parties *may* agree that payment is to be conditioned upon complete performance of the contract which the broker procures (*Fuller* v. *Bradley Contr. Co.*, 183 App. Div. 6, affd. 229 N. Y. 605; *Colvin* v. *Post Mtge. & Land Co.*, 225 N. Y. 510, 516; *Amies* v. *Wesnofske,* 255 N. Y. 156; see, also, *Bliven* v. *Lighthouse,* 231 N. Y. 64). Plaintiffs concede this to be the law; but they contend that by this agreement they did not so condition their right to payment.

The agreement's very language destroys this contention. In terms, it provided that plaintiffs and defendant were to divide the '' net profit '' equally; '' net profit '' was defined as the '' gross proceeds of the Letter of Credit '' less the '' applicable expenses ''; division of the '' net profit '' was to be made when '' the proceeds of the Letter of Credit are made available to us [defendant] ''. Clearly, this language makes the actual earning and receipt of a net profit a condition precedent to plaintiffs' right to receive one half thereof (*Illum, Inc.,* v. *American Mach. & Foundry Co.*, 226 App. Div. 5, affd. 252 N. Y. 525; *Hart* v. *Garrett Co.*, 93 App. Div. 145; *Ley* v. *Ley & Co.*, 271 App. Div. 439, affd. 296 N. Y. 956). This view is supported by plaintiff Wagner's own testimony.

If, however, it should appear that the failure to earn a net profit was due to defendant's own wrong, plaintiffs still would have a right to recover (*Fuller* v. *Bradley Contr. Co., supra,* 183 App. Div. 6, 20; *Booth* v. *New Process Cork Co.,* 196 App. Div. 376; *Clark* v. *West,* 137 App. Div. 23, 38, affd. 201 N. Y. 569; *Risley* v. *Smith,* 64 N. Y. 576; 2 Clark on New York Law of Contracts, p. 1490), unless there is clearly an agreement to the contrary, and here there is none (*Colvin* v. *Post Mtge. & Land Co., supra*). Over a century ago we reasserted the then well-settled rule "that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself" (*Young* v. *Hunter,* 6 N. Y. 203, 207). Plaintiffs, therefore, because of the terms of their brokerage agreement, can recover from defendant by showing either that there was a net profit, or that defendant's own wrong caused his nonperformance of the contract of sale (*Amies* v. *Wesnofske, supra,* 255 N. Y. 156, 162–163). Since there is no claim that defendant actually earned a net profit, proving that the breach was a result of defendant's fault is an essential part of plaintiffs' cause of action (*Illum, Inc.,* v. *American Mach. & Foundry Co., supra; Booth* v. *New Process Cork Co., supra*).

It follows that the issue of defendant's fault, and more particularly the existence of the Mexican embargo, is an important question which the Trial Judge erroneously ruled *as a matter of law* " is not a defense  *  *  *  in this case ". The Appellate Division on the other hand erred in ruling *as a matter of law* that the embargo did prevent defendant's performance. The record before us is barren of any competent evidence of any statutes, executive orders or decrees of the Mexican Government. What evidence was adduced was mere hearsay, inconclusive and flatly contradictory. Nor does it appear that the majority of the Appellate Division chose to take judicial notice of an applicable Mexican law, order or regulation. Consequently, they could not find upon this record as a matter of law that the Mexican embargo did exist. Moreover, since counsel have neither requested us to take judicial notice of the alleged embargo, nor made accurate information thereof available to us by appropriate reference or otherwise, we decline to exercise our discretion under section 344-a of the Civil Practice Act, and

independently attempt to determine whether there actually was such an embargo; for the same reasons the courts below were not required to do so (*Pfleuger* v. *Pfleuger,* 304 N. Y. 148, 152).

Both parties raise questions concerning plaintiffs' allegations of due performance and defendant's admissions thereof which may be important on the new trial we must order. In their complaint plaintiffs alleged: (1) that they had performed all the conditions of their contract on their part to be performed; (2) that the buyer had similarly duly performed all the conditions of its contract of sale with defendant, and (3) that the letter of credit was established. Each of these allegations defendant admitted in his third amended answer, thereby foreclosing himself from attempting to prove any failure of either plaintiffs or the buyer to perform their obligations under the two contracts. These admissions, however, do not prevent defendant from showing that his failure to perform was not due to his own wrong, but rather to action by some outside agency beyond his control. In other words, while defendant cannot be permitted to show that no letter of credit was established or that the buyer failed to make the proceeds of the letter of credit available to him, he may nevertheless introduce competent evidence under his denial of paragraph twenty-third of the complaint to show that because of the Mexican embargo, his failure to perform was not wrongful nor committed with a view to release him of his lawful obligation to plaintiffs, and that he was not at fault in failing to make a "net profit" on the sale. In short, he may show that his "non-performance" was not "caused by himself" (*Young* v. *Hunter, supra*).

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial ordered, with costs to abide the event.

Lewis, Ch. J., Conway, Desmond, Dye and Fuld, JJ., concur; Van Voorhis, J., taking no part.

Judgments reversed, etc.