GUY GRAFF, Doing Business as SOUTH FORK REALTY, Respondent, v MARVIN BILLET, Appellant.

Second Department, May 7, 1984

**APPEARANCES OF COUNSEL**

*Tucker, Gellman & Mulderig, P. C. (Michael J. Kopcsak* of counsel), for appellant.

*Esseks, Hefter, Cuddy & Angel (Stephen R. Angel* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

In March, 1981, the plaintiff broker showed a prospective purchaser a vacant parcel of land listed with him by the defendant seller. The broker subsequently drew up an agreement under which, *inter alia,* he would earn a commission for selling the parcel of land "as, if and when title passes, except for willful default on the part of the seller". The seller does not dispute the terms of this agreement. Before closing of title and before any written agreement was entered into between the prospective purchaser and the seller, the latter decided to accept a better offer from

someone else. The broker then sued to recover his commission and Trial Term, after a Bench trial, entered judgment in his favor. For the reasons stated, we reverse and dismiss the complaint.

It is, of course, fundamental that in the absence of an agreement to the contrary a broker is entitled to his commission when he produces a buyer ready, willing and able to purchase on terms acceptable to the seller (see *Lane-Real Estate Dept. Store v Lawlet Corp.*, 28 NY2d 36, 42; *Hecht v Meller*, 23 NY2d 301, 305; *Levy v Lacey*, 22 NY2d 271, 274). The broker's right to receive a commission otherwise owed to him may, however, be varied by agreement as at bar where the parties agreed that the commission would be owing "if and when title passes" (see *Lane-Real Estate Dept. Store v Lawlet Corp., supra*, pp 42-43). Whatever preparatory work the broker did to produce a ready, willing and able buyer was irrelevant once he agreed to forgo his commission until passage of title. He bore the risk of the deal until the condition precedent was fulfilled, and that condition precedent simply never materialized (see *White & Sons v La Touraine-Bickford's Foods*, 50 AD2d 547, affd 40 NY2d 1039).

Nor can the seller's acceptance of a better offer be deemed a "willful default" as contemplated by the commission agreement, requiring payment of the brokerage fee. Unless the terms "as, if and when title passes" evince an intent on the part of the parties that the deal progress to some legally recognizable form before the commission was to be earned, the commission agreement would be nothing more than a reiteration of the general rule of earning a brokerage fee upon presentation of a ready, willing and able buyer and would therefore be of no real practical value. Clearly, the parties did not mean to enter into an unnecessary agreement, and the terms chosen were meant to impose upon the broker something more than presenting a ready, willing and able buyer. In any event, any ambiguity in the agreement on that score must be resolved against the broker who drafted it (see *Rentways v O'Neill Milk & Cream Co.*, 308 NY 342; *Universal No. 2 Corp. v Ainbinder*, 25 Misc 2d 613). Consequently, since no deal between the prospective purchaser and the seller ever materialized in

legal, written form, the seller could not be in default of the broker's agreement and was free until then to negotiate with other prospective purchasers without becoming liable for a commission (cf. *White & Sons v La Touraine-Bickford's Foods, supra*).

The dissent would hold the seller in default "whether [his alleged] repudiation of the transaction with the buyer occurred before or after the execution of the contract of sale". Besides being contrary to the plain meaning of the agreement as already discussed, such an interpretation cannot be truly supported by the Court of Appeals cases the dissent itself cites. In those cases, unlike here, there was a sales contract in existence between seller and the prospective purchaser produced by the broker, and under those circumstances, the seller, who frustrated closing, was held liable for the commission (see *Levy v Lacey, supra,* p 273; *Wagner v Derecktor,* 306 NY 386, 391; *Stern v Gepo Realty Corp.,* 289 NY 274, 276; *Amies v Wesnofske,* 255 NY 156, 158; *Colvin v Post Mtge. & Land Co.,* 225 NY 510, 515). Furthermore, according to these cases, an agreement that the broker is not entitled to his commission when the failure to complete the sale is due to the seller's action will be found only where such a result appears to have been clearly intended (see *Levy v Lacey, supra,* p 274; *Colvin v Post Mtge. & Land Co., supra,* p 516). In this case, the parties clearly intended that the broker would not be entitled to a commission prior to the execution of a contract of sale, and their agreement must be so construed, drafted as it was by the broker who could have drafted it otherwise.

Accordingly, we conclude that the seller was not in default of the brokerage agreement, no cause of action for a commission lay against him and Trial Term should have dismissed the complaint.

LAZER, J. P. (dissenting). After the plaintiff produced a buyer ready, willing and able to purchase at the seller's terms, he mailed the seller an agreement which provided that the brokerage commission of $9,500 was "due and payable * * * as, if and when title passes, except for willful default on the part of the seller, in which case the commission shall be payable upon demand after said default". Also sent to the seller — this time by the buyer — was the down

payment and a signed contract incorporating the terms agreed upon between buyer and seller. The seller never signed the contract, however, because he subsequently received a higher offer for the property from another purchaser. In the broker's action that followed, the court found that the condition precedent to payment of the commission — the passage of title — had been frustrated by the seller's willful default, and plaintiff was awarded judgment.

Believing that a seller who frustrates a sale cannot be deemed in "default" before a written contract with the buyer is in existence, my colleagues have voted to reverse the judgment. In their view, because the seller never signed the contract, he was never in default, and because title never closed, the commission never became due. I view it as immaterial whether the seller's repudiation of the transaction with the buyer occurred before or after execution of the contract of sale, for a seller is in default if his willful refusal to consummate a sale prevents the fulfillment of the condition precedent to payment of the brokerage commission.

It is a fundamental proposition of real estate law that absent an agreement to the contrary a real estate broker has earned his commission when he has produced a buyer ready, willing and able to purchase at terms acceptable to the seller (*Lane-Real Estate Dept. Store v Lawlet Corp.,* 28 NY2d 36; *Wagner v Derecktor,* 306 NY 386). The proposition can be altered, of course, if the broker and seller make an agreement conditioning payment of the commission on the happening of other events such as the closing of title (*Levy v Lacey,* 22 NY2d 271; *Stern v Gepo Realty Corp.,* 289 NY 274; *Amies v Wesnofske,* 255 NY 156). Nevertheless, unless the agreement contains a provision excusing willful default, a claim for its breach cannot be defeated by a party who relies on a condition precedent which his own nonperformance has prevented from occurring. Consequently, a real estate broker is entitled to his commission if the failure to close title as provided in the brokerage agreement is the fault of the seller (*Levy v Lacey, supra,* p 274; *Wagner v Derecktor, supra,* p 391; *Amies v Wesnofske, supra,* pp 162-163).

The instant brokerage agreement contained no provision relieving the seller of liability for willfully frustrating the transaction and it is undisputed that title never closed because the seller decided to sell to somebody else at a higher price. The purpose of brokerage contracts of the type at issue here is to shift the risk of the buyer's default or the seller's title deficiencies to the broker, but the broker is not ordinarily deemed to have accepted the risk of the seller's own willful default (Note, 32 Col L Rev 1194; Note, 31 Col L Rev 701). By deliberately refusing to close title, the seller waived the condition that no commission would be due until title closed.

Although the propositions stated are hardly novel, my colleagues remain unmoved because they distinguish between defaults that transpire before and after the seller's execution of the contract of sale. Not only do I fail to discern the existence of any such distinction in the brokerage agreement, but I believe the majority's position contravenes the rather basic principle that a party cannot take advantage of a failure of a condition precedent caused by his own conduct (see *Westhill Exports v Pope,* 12 NY2d 491; 5 Williston, Contracts [3d ed], § 677). The agreement's direct reference to "willful default" by the seller makes it plain that having produced a buyer ready, willing and able to buy at the seller's terms, the broker's signature on the agreement did not reflect any intention to accept the risk that the commission would never be paid if the seller got a better offer before signing the contract of sale (cf. *Elliman & Co. v Sterling Garage,* 279 App Div 20, affd 304 NY 846; *Colvin v Post Mtge. & Land Co.,* 225 NY 510). One commentator has declared it intolerable as a matter of principle to limit a seller's default to his postcontract acts (Biskind & Barasch, Law of Real Estate Brokers, § 70 [1983 Cum Supp]).

In other jurisdictions, it is clear that unless the seller has reserved complete liberty of action, including the right to refuse to complete the sale on any ground whatsoever, the broker is entitled to a commission upon the seller's default, even if the default consists of a failure to sign the contract of sale (see *Holmes Banking & Realty Co. v Baum,* 85 Conn 383; *Ikeoka v Kong,* 47 Hawaii 220; *Jacobs v Rothschild,*

200 Okla 599; *Smith v Gibralter Oil Co.,* 254 F2d 518). Thus, once vendor and vendee have agreed on the essential terms of a transaction, the vendor cannot assert as a defense to an action for a commission that the principals have not executed a complete written agreement if the seller has wrongfully prevented completion of the transaction (see *Nuvest v Gulf & Western Inds.,* 649 F2d 943; cf. *Trylon Realty Corp. v Di Martini,* 34 NY2d 899).

The majority's view seems largely based on *White & Sons v La Touraine-Bickford's Foods* (50 AD2d 547, affd 40 NY2d 1039), where the offer to pay a commission invoked a competition between brokers. In *White,* the seller's agents wrote to a large number of brokers offering to pay a commission to any one of them who produced a purchaser "if a sale is consummated". White's purchaser made an offer that defendant's board of directors approved, but the transaction never reached the contract stage because the defendant subsequently received a higher offer from another broker. Although the trial court found that White was due a commission, the First Department reversed and the Court of Appeals affirmed. *White* merely involves an invitation to enter a competition which will be won by the broker whose " 'sale is consummated' ", with no obligation to anyone until that event has occurred. This view of *White* is supported by the defendant's brief in the Court of Appeals which told the court that the "agreement spells out the competition among brokers" and that this was not a case where "individual brokers were misled into bringing in prospective buyers without knowledge that they were bidding against others".

In affirming *White* on this fact pattern, the Court of Appeals hardly could have intended to overrule the plethora of cases where brokers were found entitled to their commissions because the failure to complete the transaction was caused by the seller's willful conduct (see, e.g., *Lane-Real Estate Dept. Store v Lawlet Corp.,* 28 NY2d 36, *supra; Levy v Lacey,* 22 NY2d 271, *supra; Wagner v Derecktor,* 306 NY 386, *supra; Amies v Wesnofske,* 255 NY 156, *supra*).

My final concern relates to the effect of the majority's holding on future dealings between brokers and sellers.

Under the rule enunciated in this case, when a broker furnishes a seller with the standard "if, as and when title passes" commission agreement, he frees the seller to reject the broker's ready, willing and able buyer by withdrawing the property from the market or accepting another offer without any obligation to pay the broker's commission, provided the repudiation takes place before the contract of sale is signed.

Accordingly, I dissent and vote to affirm.

THOMPSON, O'CONNOR and BROWN, JJ., concur; LAZER, J. P., dissents and votes to affirm the judgment, with an opinion.

Judgment of the Supreme Court, Suffolk County, entered January 10, 1983, reversed, on the law, with costs, and complaint dismissed.